UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEROME CARL THOMPSON

                         Plaintiff,

     v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                         Defendant.

**DECISION
and
ORDER**

**17-CV-00281-LGF
(consent)**

---

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER
                              Attorneys for Plaintiff
                              AMY C. CHAMBERS, of Counsel
                              6000 Bailey Avenue
                              Suite 1A
                              Amherst, New York 14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              FERGUS KAISER
                              Special Assistant United States Attorney, of Counsel
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202, and

                              STEPHEN P. CONTE
                              Regional Chief Counsel
                              United States Social Security Administration
                              Office of the General Counsel, of Counsel
                              26 Federal Plaza
                              Room 3904
                              New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On June 19, 2018, the parties consented, in accordance with a Standing Order (Dkt. No. 18), to proceed before the undersigned, pursuant to 28 U.S.C. § 636(c). (Dkt. No. 18-1). The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, filed by Plaintiff on October 5, 2017 (Dkt. No. 11), and by Defendant on December 29, 2017 (Dkt. No. 15). For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**BACKGROUND and FACTS**

Plaintiff Jerome Thompson ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") decision denying his application for disability benefits for Supplemental Security Income ("SSI") benefits under Title II of the Act, and Social Security Disability Insurance ("SSDI") benefits under Title XVI of the Act, together ("disability benefits"). Plaintiff, born on April 6, 1971 (R. 121),[2] alleges that he became disabled on September 28, 2013, when he stopped working as a result of a left leg injury. (R. 145).

---

[2] "R" references are to the page numbers of the administrative record electronically filed in this case for the Court's review. (Dkt. No. 7).

Plaintiff's application for disability benefits was initially denied by Defendant on January 24, 2014 (R. 74), and, pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Karen Wiedemann ("Judge Wiedemann" or "the ALJ") on June 28, 2016, in Buffalo, New York, where Plaintiff, appeared *pro se* and testified at the hearing. (R. 8-27). Vocational expert ("VE") Casey Crawford also appeared and testified. (R. 27-62). The ALJ's decision denying Plaintiff's claim was rendered on July 20, 2016. (R. 13-24). Plaintiff requested review by the Appeals Council, and on August 21, 2016, the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-4). This action followed on March 30, 2017, with Plaintiff alleging that the ALJ erred by failing to find him disabled. (Dkt. No. 1).

On October 5, 2017, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 11) ("Plaintiff's Memorandum"). Defendant filed, on December 29, 2017, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 15) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on January 23, 2018 ("Plaintiff's Reply Memorandum") (Dkt. No. 17). Oral argument was deemed unnecessary.

Facts pertinent to the review in this case include that on October 21, 2013, Plaintiff fractured his left tibia (shinbone) while wrestling with his cousin (R. 215, 219, 223). Upon admission to Niagara Falls Memorial Hospital, in Niagara Falls, New York, Donald Nenno, M.D. ("Dr. Nenno"), completed left tibial open reduction and internal fixation surgery. (R. 215-16, 219-27). Dr. Nenno advised Plaintiff that surgery was

3

necessary to prevent future arthritis and that Plaintiff would have a varying degree of permanent disability based on the outcome of his surgery. (R. 223). Plaintiff received regular check-ups with Kathleen Ventry, ANP, a Nurse Practitioner ("Nurse Practitioner Ventry") at Niagara Falls Memorial Primary Care Center ("NFMPCC"), from November 2013 until January 2016. (R. 228-36, 316-421). On November 14, 2013, an X-ray of Plaintiff's left knee showed no significant degenerative changes. (R. 277).

On January 17, 2014, Donna Miller, D.O. ("Dr. Miller"), completed a consultative orthopedic examination of Plaintiff, noted that Plaintiff walked with a cane and exhibited a hesitant gait (R. 243-33), and diagnosed Plaintiff with post-surgical chronic left leg pain and opined that Plaintiff had a mild limitation to the ability to stand, walk, bend and kneel for prolonged periods of time. (R. 246).

That same day, Janine Ippolito, Psy.D., ("Dr. Ippolito"), completed a consultative psychiatric evaluation on Plaintiff and noted that Plaintiff reported that he was let go after working for one day as a security guard and that no work "fits" him. (R. 238). Dr. Ippolito evaluated Plaintiff with the ability to follow and understand simple directions and instruction, perform simple tasks independently, maintain concentration and attention, maintain a regular schedule, learn new tasks, perform complex tasks independently and make appropriate decisions, with no significant limitations in Plaintiff's ability to function on a daily basis. (R. 241).

On March 27, 2014, Richard Ahr, M.D. ("Dr. Ahr"), completed a post-surgical examination on Plaintiff and prescribed Gabapentin (pain) for a possible diagnosis of regional complex pain syndrome. (R. 257). That same day, Gail Stokoe, M.D. ("Dr. Stokoe"), reviewed an X-ray of Plaintiff's left knee that showed left knee osteopenia

4

(lower than normal bone density) and osteoarthritis and well positioned surgical hardware. (R. 288).

On April 28, 2014, Mohammad A. Khan, M.D. ("Dr. Khan"), a sleep specialist with Niagara Pulmonary & Sleep Medicine, P.C. ("NPSM"), completed a sleep apnea evaluation on Plaintiff who reported waking with loud snoring, tiredness, gasping arousals, and daytime symptoms of hypersomnia (excessive daytime sleepiness). (R. 405-06). Dr. Khan diagnosed Plaintiff with obstructive sleep apnea and recommended that Plaintiff lose weight and avoid drowsy driving. (R. 406).

On May 9, 2014, Edward Ventresca, M.D. ("Dr. Ventresca"), completed a sleep study on Plaintiff, evaluated Plaintiff with an Epworth[3] scale rating of nine and diagnosed Plaintiff with severe obstructive sleep apnea. (R. 313).

On May 29, 2014, Paul Phillips, M.D. ("Dr. Phillips"), completed an orthopedic evaluation on Plaintiff and noted that Plaintiff exhibited antalgic gait (walking pattern to alleviate pain), limited left knee range of motion ("ROM"), advised Plaintiff to wean using his cane, and referred Plaintiff for pain management treatment for possible regional complex pain syndrome of Plaintiff's left tibia. (R. 253, 255).

Nurse Practitioner Ventry noted that Plaintiff was able to walk without a cane on December 19, 2014 (R. 362), and that Plaintiff reported no depression, anxiety, panic attacks, or frequent mood swings on March 19, 2015 (R. 352), and April 20, 2015 (R. 350).

---

[3] The Epworth Sleepiness Scale is a self-administered questionnaire used to rate an individual's propensity to sleep during the day with results that range from 0 to 24 (the highest probability for daytime drowsiness).

On March 3, 2016, Viktor Yatsynovich, M.D. ("Dr. Yatsynovich"), completed a outpatient psychiatric evaluation on Plaintiff and noted that Plaintiff reported that his mother died three to four months earlier, that "everything bothers me," and diagnosed Plaintiff with Axis I[4] post-traumatic stress disorder ("PTSD"), moderate, depressive disorder unspecified, rule out dysthymia, rule out alcohol dependence, history of attention deficit hyperactivity disorder ("ADHD"), Axis II learning disability, Axis IV – moderate, and an Axis V Global Assessment of Functioning ("GAF") score of 50.[5]  (R. 429).

On June 11, 2015, Elizabeth Stom, MSPT, ("Physical Therapist Stom"), a physical therapist with NFMCC completed a functional capacity evaluation on Plaintiff and noted that Plaintiff was able to ambulate with no antalgic gait using a cane, and that Plaintiff reported he attended physical therapy for more than a year with minimal results. (R. 422).  Physical Therapist Stom noted that Plaintiff had the ability to lift 20 pounds, occasionally sit, push, pull, and stand, and that Plaintiff was capable of performing the full capacity for light work.  (R. 423-24).

On March 11, 2016, Jennifer Weerheim ("Counselor Weerheim"), a licensed mental health counselor with NFMMC, completed a therapy evaluation with Plaintiff and noted that Plaintiff's mood was agitated and anxious, with avoidant, anxious, and

---

[4] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders; Axis II, personality disorders; Axis III, general medical conditions; Axis IV, psychosocial and environmental stressors, and Axis V, global assessment of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

[5] A GAF score of 50 is equated with serious symptoms (*i.e.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*i.e.*, no friends, unable to keep a job, cannot work).

agitated affect, and that Plaintiff was cooperative, guarded, isolated and withdrawn behavior. (R. 427). On March 24, 2016, Counselor Weerheim completed a mental health evaluation on Plaintiff and noted that Plaintiff reported anxiety and depression with anger outbursts, sleep disturbance, and suffering after the death of his mother. (R. 426).

## DISCUSSION

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error. *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

A. **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience."

7

*Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).  The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

      The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*  The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[7] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g),

---

[7] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision.  20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

**B.     Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since September 28, 2013, Plaintiff's alleged onset date of disability.  (R. 15).  Plaintiff does not contest this finding.

**C.     Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether the disability claimant had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities."  If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends.  20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b). The step two analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work. *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).

In this case, the ALJ determined in accordance with 20 C.F.R. § 416.920a(d)(1), that Plaintiff suffered from the severe impairments of open reduction internal fixation surgery secondary to a left tibial plateau fracture and obesity, and that Plaintiff's pre-diabetes, sleep apnea and mental impairments of alcohol abuse, anxiety, post-traumatic stress disorder ("PTSD"), and depression were not severe. (R. 15-17). Plaintiff contends that the ALJ's step two findings are erroneous, as the ALJ failed to consider Plaintiff's intractable pain, complex pain syndrome, PTSD, depressive disorder, history of attention deficit hyperactivity disorder ("ADHD"), osteoporosis, and learning disorder in step two of the ALJ's disability analysis and the remaining steps of the ALJ's disability determination. Plaintiff's Memorandum at 15-16. In this case, the ALJ's finding that

11

Plaintiff's PTSD, history of ADHD and depressive disorder were not severe impairments under step two of the sequential disability analysis is supported by substantial evidence as those impairments did not significantly limit Plaintiff's ability to perform basic work activities. In particular, on January 17, 2014, Dr. Ippolito evaluated Plaintiff with the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately to others appropriately and deal with stress with some mild limitations. (R. 240-41). Nurse Practitioner Ventry evaluated Plaintiff with no depression, anxiety, panic attacks, or frequent mood swings on October 19, 2015 (R. 334), November 19, 2015 (R. 330), December 17, 2015 (R. 327), January 18, 2016 (R. 320), and February 18, 2016 (R. 323), and evaluated Plaintiff with normal concentration, memory, insight, and judgment on October 11, 2013 (R. 229), January 19, 2015 (R. 357), February 19, 2015 (R. 355), April 20, 2015 (R. 351), May 20, 2015 (R. 349), June 24, 2015 (R. 346), July 21, 2015 (R. 343), and September 16, 2015 (R. 337), such consistent evaluations that support the ALJ's finding that Plaintiff's PTSD, ADHD and depressive disorder were not severe impairments under step two of the disability analysis. Plaintiff's motion on this issue is therefore denied.

Plaintiff further contends that the ALJ failed to consider Plaintiff's pain related disorder as a separate impairment under step in step two of the sequential analysis. Plaintiff's Memorandum at 20. Defendant maintains that the ALJ was not required to separate Plaintiff's pain from Plaintiff's tibial fracture and surgery as any limitations that resulted from Plaintiff's pain were included in the ALJ's finding that Plaintiff had the

residual functional capacity assessment to perform light work with limitations to no more than four hours of standing and walking, sitting for six hours in an eight-hour workday, occasional climbing of ramps and stairs, balancing and stooping with no climbing of ladders, ropes or scaffolds, kneeling, crouching or crawling and the use of a stick cane for ambulation. (R. 18). Defendant's Memorandum at 14-16.

In this case, the ALJ included Plaintiff's pain related limitations in the ALJ's residual functional capacity assessment of Plaintiff and in a hypothetical posed to the vocational expert ("VE") that restricted Plaintiff to occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds, standing and walking four hours in an eight-hour workday, sitting for six hours in an eight-hour day, no climbing ladders, ropes, or scaffolds, and no kneeling, crouching, or crawling. (R. 58). Moreover, any error that may result from the ALJ's failure to include Plaintiff's pain as a severe impairment under step two of the sequential disability analysis is harmless. *See Johnson v. Berryhill*, 2018 WL 732783, at *4 (W.D.N.Y. Feb. 6, 2018) (citing *Reices-Colon v. Astrue*, 523 Fed. App'x. 796, 798 (2d Cir. 2013) (harmless error where ALJ erred in excluding severe impairments from step two of the disability analysis but included the impairments throughout the remaining steps of the sequential analysis)). Plaintiff's motion on this issue is without merit and denied.

Plaintiff's further contention that the ALJ erred in not considered Plaintiff's diagnosis of sleep apnea and pre-diabetes is also without merit. The ALJ found that Plaintiff's pre-diabetes and obstructive sleep apnea were slight abnormalities at most, that Plaintiff's pre-diabetes was adequately controlled with Plaintiff's Metformin medication (R. 15, 325), and that Plaintiff's sleep apnea was successfully treated with

Plaintiff's prescribed sleep mask. (R. 15, 66). Plaintiff's motion on this issue is therefore denied.

D. **Listing of Impairments**

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria for disability under Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"), specifically 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.02 ("§ 1.02") (Major Dysfunction of a joint). (R. 17).

Plaintiff contends that the ALJ failed to determine whether Plaintiff's PTSD, history of ADHD and learning disorder meet the criteria for disability under 20 C.F.R. Part 404, Subpt. P, Appendix 1 § 12.02 ("§ 12.02") (Organic mental disorders), 20 C.F.R. Part 404, Subpt. P, Appendix 1 § 12.04 ("§ 12.04") (Affective disorders), 20 C.F.R. Part 404, Subpt. P, Appendix 1 § 12.06 ("§ 12.06") (Anxiety related disorders), and 20 C.F.R. Part 404, Subpt. P, Appendix 1 § 12.05 ("§ 12.05") (Intellectual disability) and provide a finding on the combined effect of Plaintiff's impairments under 20 C.F.R. § 404.1520(d). Plaintiff's Memorandum at 17. As discussed in the foregoing, Discussion, *supra*, at 10-13, the ALJ's step-two findings are supported by substantial evidence. No error therefore results from the ALJ's decision not to include findings on whether Plaintiff's non-severe impairments of PTSD, history of ADHD and depression meet the criteria to be deemed disabled under step three of the disability review analysis. *See Childs v. Colvin*, 2016 WL 1127801, at *4 (W.D.N.Y. Mar. 23, 2016) (citing *Chandler v. Soc. Sec. Admin.,* 2013 WL 2482612, at *10 (D. Vt. June 10, 2013) (remand required only in instances where the ALJ's step-two error prejudiced claimant at subsequent steps in the sequential evaluation)). Plaintiff's motion on this issue is denied.

## E. Residual functional capacity

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

In this case, the ALJ found that Plaintiff had the residual functional capacity to perform light work with limitations to no more than four hours of standing or walking in an eight-hour workday, sitting for six hours in an eight-hour workday, occasional climbing of ramps and stairs, balancing, stooping, no climbing ladders, ropes, or scaffolds, no kneeling, crouching or crawling, and the use of a stick cane for ambulation. (R. 18).

Plaintiff contends that the ALJ's residual functional capacity assessment of Plaintiff is erroneous as the ALJ failed to properly weigh the medical and non-medical opinions in the record. Plaintiff's Memorandum at 23. In particular, Plaintiff contends the ALJ erred by assigning more weight to Dr. Miller's opinion that Plaintiff had a mild limitation to Plaintiff's ability to stand, walk, bend, or kneel for prolonged periods of time (R. 246), and Physical Therapist Stom's opinion that Plaintiff was capable of performing a full range of light work (R. 421-24), than to Dr. Nenno's opinion that Plaintiff would experience some degree of a permanent disability dependent on the outcome of his knee surgery (R. 223), and that the ALJ ignored Dr. Ahr's diagnosis of possible residual complex pain disease. (R. 257). Plaintiff's Memorandum at 27. Defendant maintains that the ALJ properly afforded less weight to the opinions of Drs. Ahr and Nenno as each physician provided treatment to Plaintiff on only one occasion and that Dr. Nenno's treatment was limited to performing Plaintiff's tibial surgery. Defendant's Memorandum at 21-22.

The Act requires ALJs to grant significant weight to treating physician opinions supported by medical evidence in the record and requires that treating physician opinions be granted "controlling weight" when the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2). Treating physician opinions are not determinative and granted controlling weight only when they are not inconsistent with other controlling evidence. 20 C.F.R. § 404.1527(d); *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002).

In this case, Dr. Nenno advised Plaintiff that he would have a permanent disability of a "varying degree" based on the outcome of Plaintiff's left knee surgery. (R. 223). Dr. Nenno's only treatment of Plaintiff was Plaintiff's left knee surgery completed on September 29, 2013. (R. 215). Contrary to Plaintiff's assertion that the ALJ was required to afford more weight to Dr. Nenno's "opinion" on Plaintiff's disability status, Plaintiff's Memorandum at 27, substantial evidence supports the ALJ's decision to afford less weight to such opinion. Specifically, on November 14, 2013, following his surgery, an X-ray of Plaintiff's left knee showed no significant degenerative changes (R. 277), and Dr. Miller, a year after Plaintiff's knee surgery, evaluated Plaintiff as having only a mild limitation to Plaintiff's ability to stand, walk, bend and kneel for prolonged periods of time (R. 246). Such substantial evidence supports the ALJ's finding on Plaintiff's ability to function and the ALJ's affording less weight to Dr. Nenno's advice to Plaintiff regarding the possibility that Plaintiff would experience to a "varying degree" any permanent disability from his knee surgery. Further, Nurse Practitioner[8] Ventry consistently evaluated, over a substantial period of time, Plaintiff having the ability to walk with the use of a cane (R. 321, 323, 325, 333, 336-37, 339-40, 348-57), and Physical Therapist Stom noted on June 11, 2015 (R. 421), that Plaintiff had the full capacity to perform light work (R. 424). Although, as noted, Discussion, *supra*, at n.8,

---

[8] Under the regulations in effect at the time that this Plaintiff's claim was filed, nurse practitioners and physical therapists are not considered "acceptable medical sources" under 20 C.F.R. § § 404.1513(a), 416.913(a) (previous versions effective until March 26, 2017) rather, considered "other sources" within the meaning of 20 C.F.R. § § 404.1513(d) and 416.913(a). As such, the opinions of Nurse practitioner Ventry and Physical Therapist Stom cannot be used to establish the existence of a medically determinable impairment, *see* SSR 06-03P, 2006 WL 2329939, at*2 (2006), and are not entitled to controlling weight as against the opinion of a treating physician but may be used to show the severity of an individual's impairment and how it affects the individual's ability to function. *See Marnell v. Commissioner of Social Security*, 2018 WL 3620152, at *11 W.D.N.Y. July 30, 2018).

such observations cannot establish the existence of a medically determinable impairment or provide controlling weight contrary to the opinion of a treating physician, such observations may be relied upon to show the severity of an individual's impairment and its effect on his or her ability to function. *Id.* Moreover, Dr. Nenno's pre-surgical advice to Plaintiff that Plaintiff may incur permanent disability to a "varying degree" does not definitively establish that Plaintiff would in fact suffer such a result and the Commissioner alone has the responsibility for determining Plaintiff's ultimate status of disability. *See* 20 C.F.R. § 404.1527(d)(1). Plaintiff's motion on this issue is therefore without merit.

Plaintiff's contention, Plaintiff's Memorandum at 24, that the ALJ failed to properly weigh the opinion of Dr. Yatsynovich is also without merit. The ALJ noted that Dr. Yatsynovich evaluated Plaintiff on only one occasion and that Plaintiff's GAF score of 50 was not supported by Plaintiff's mental status examination and was based solely on Plaintiff's subjective complaints (R. 17). Such findings are supported by Nurse Practitioner Ventry's findings that Plaintiff exhibited no depression, anxiety, panic attacks, or frequent mood swings on October 19, 2015 (R. 334), November 19, 2015 (R. 330), December 17, 2015 (R. 327), January 18, 2016 (R. 320), and February 18, 2016 (R. 323), and exhibited normal concentration, memory, insight, and judgment on October 11, 2013 (R. 229), January 19, 2015 (R. 357), February 19, 2015 (R. 355), April 20, 2015 (R. 351), May 20, 2015 (R. 349), June 24, 2015 (R. 346), July 21, 2015 (R. 343), and September 16, 2015 (R. 337). The ALJ's determination to afford less weight to Dr. Yatsynovich's opinion is therefore supported by substantial evidence and Plaintiff's motion on this issue is denied. *See Rock v.* Colvin, 628 Fed. App'x. 1, 4 (2d Cir. 2015) (no remand where ALJ

properly discounts GAF score based on a claimant's subjective complaints and without support of substantial evidence).

Plaintiff further contends that the ALJ erred in not taking Plaintiff's *pro se* status into account and that the ALJ was required to notify the Plaintiff that he should obtain more detailed statements regarding his functional limitations. Plaintiff's Memorandum at 27. Plaintiff's contention is without merit. At the administrative hearing on June 28, 2016, Plaintiff, appeared *pro se* and testified. (R. 8-27). The ALJ informed Plaintiff of his right to representation and offered to postpone the hearing if Plaintiff wished to seek representation (R. 35), and, upon notifying the ALJ that he preferred to proceed *pro se*, Plaintiff confirmed that the record was complete through the time that Plaintiff attended outpatient counseling at Niagara Falls Memorial Hospital (the last dated medical evidence included in the record) (R. 425-31). (R. 36). Plaintiff testified that Plaintiff's psychiatric impairment and medications had not changed during the time between March 2016 and the time of the administrative hearing on June 6, 2016. *Id.* At the end of the administrative hearing, upon inquiry by the ALJ, Plaintiff testified that he did not have any additional information he wished to present at the hearing. (R. 61). The ALJ thus adequately protected Plaintiff's rights as a *pro se* litigant "ensuring that all of the relevant facts [we]re sufficiently developed and considered" *see Cruz v. Sullivan*, 912 F.2d 8 (2d Cir. 1990), and Plaintiff's motion on this issue is denied.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 9) is DENIED; Defendant's motion (Doc. No. 13) is GRANTED.  The Clerk of Court is ordered to close the file.

SO ORDERED.

*/s/ Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 1, 2018
                Buffalo, New York